**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LUIS DIAZ, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| LAJOIE AUTO WRECKING COMPANY, INC. | : | |
| | : | |
| Defendant. | : | JUNE 13, 2022 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Americans with Disabilities Act Amendments Act; Connecticut General Statue § 31-51q; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

THE McMINN EMPLOYMENT LAW FIRM, LLC
1000 Lafayette Boulevard, Suite 1100 ▪ Bridgeport, CT 06604 ▪ T: (203) 683-6007 ▪ F: (203) 683-9881

## PLAINTIFF

6. The Plaintiff, Luis Diaz ("Plaintiff" or "Diaz ") is a natural person and resident of the State of Connecticut.

## DEFENDANT

7. The Defendant, LaJoie Auto Wrecking Company, Inc. ("Defendant" or "LaJoie"), is a domestic corporation, headquartered in the State of Connecticut, is registered to conduct business in the State of Connecticut, and conducts substantial business within the State of Connecticut at 40 Meadow Street, Norwalk, CT 06854, where Plaintiff was employed.

8. Defendant employs more than fifteen (15) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Diaz received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on March 17, 2022.

## FACTUAL ALLEGATIONS

10. Diaz is Hispanic and suffers from a disability.

11. In March of 2018, Defendant hired Diaz as a dump truck driver.

12. At all times relevant, Diaz performed the duties of his position in a satisfactory manner.

13. On or about August 5, 2020, Diaz was tasked with driving the company's Mack roll off truck from Norwalk to Danbury.

14. Of significant importance, The Mack truck did not have any air conditioning, and the outside temperate was approximately 90 degrees on August 5, 2020. (https://www.accuweather.com/en/us/new-haven/06510/august-weather/327357?year=2020).

15. This drive would take approximately one to two hours, depending on the traffic.

16. That day, Diaz was supposed to drop off the Mack truck in Danbury and pick up a dump truck gondola (used to carry crushed cars), and drive a gondola truck from Danbury back to his work yard in Norwalk.

17. Driving the Mack truck with no air conditioning raised the temperature inside the truck to dangerously hot conditions, causing Diaz to suffer heat exhaustion.

18. Nonetheless, Diaz, exhausted from heat, dropped off the Mack truck in Danbury and picked up the gondola truck, which to his severe detriment, also did not have air conditioning. Sorrowfully, Diaz had to drive another couple of hours back to Norwalk with no air conditioning.

19. This caused Diaz to further suffer from heat exhaustion.

20. Diaz managed to return the Gondola truck to the yard in Norwalk.

21. However, Diaz's heat exhaustion had overcome him by the time he had returned to Norwalk. He felt exhausted, was perspiring profusely, and felt as though he may faint on the spot.

22. Heat exhaustion is a condition whose symptoms may include heavy sweating and a rapid pulse, a result of the body overheating. It's one of three heat-related syndromes, with heat cramps being the mildest and heatstroke being the most severe.[1]

23. Causes of heat exhaustion include exposure to high temperatures, particularly when combined with high humidity, and strenuous physical activity. Without prompt

---

[1] https://www.mayoclinic.org/diseases-conditions/heat-exhaustion/symptoms-causes/syc-20373250

-3-

treatment, heat exhaustion can lead to heatstroke, a life-threatening condition. Fortunately, heat exhaustion is preventable.[2]

24. Diaz immediately informed his co-worker of his debilitating exhausting condition, who, in turn, informed management of Diaz's condition.

25. Diaz reported to the office and informed management that he did not feel well because of the heat exhaustion; perspiration was visible and he did not look well.

26. Diaz also informed Brandon Keane ("Keane") and James Murphy ("Murphy") that he needed to go home and rest because he did not feel well.

27. Diaz returned to work, and in one week, on or about August 12, 2020, Murphy tasked Diaz with once again driving the same Mack roll-off truck with <u>no air conditioning—another 90-degree temperature day</u>. (https://www.accuweather.com/en/us/new-haven/06510/august-weather/327357?year=2020)

**A. Diaz Raises an Important Safety Concern Pursuant to his Rights Under Conn. Gen. Stat. §31-51q.**

28. Appropriately, Diaz raises an issue of safety concern and strong possibility of severe heat exhaustion for a second time, Diaz informed Keane that he was not comfortable driving the truck without air conditioning because of the heat exhaustion he suffered the last time he drove the Mack truck.

29. Keane and Murphy told Diaz that since he would not drive the truck (which was a safety hazard), they were accepting his resignation, i.e., Diaz was being terminated.

---

[2] Id.

30. Diaz immediately proclaimed that he was not "resigning" and that he had a family to care for and support.

31. Diaz told Keane and Murphy that he wanted to keep his job but needed to check with a physician to assess his medical condition.

32. On August 14, 2020, Diaz treated with his physician who confirmed that Diaz had suffered heat exhaustion from driving in the Mack truck with no air conditioning, and that he had high blood pressure.

33. Diaz informed Keane that he had suffered from heat exhaustion and had high blood pressure which could lead to heat stroke.

34. On August 17, 2020, Diaz provided Brandon with his doctor's note, diagnosing his condition and requesting a reasonable accommodation under the Americans with Disabilities Act Amendments Act (ADAAA).

35. Specifically, Diaz's doctor stated that Diaz "would benefit from working in air conditioning truck … to decrease the likelihood of heat exhaustion."

36. Furthermore, according to the Occupational Safety and Health Administration (OSHA), "[m]illions of U.S. workers are exposed to heat in their workplaces. Although illness from exposure to heat is preventable, every year, thousands become sick from occupational heat exposure, and some cases are fatal."[3]

37. "Under the General Duty Clause, Section 5(a)(1) of the Occupational Safety and Health Act of 1970, employers are required to provide their employees with a place of

---

[3] https://www.osha.gov/heat-exposure

employment that "is free from recognized hazards that are causing or likely to cause death or serious harm to employees." The courts have interpreted OSHA's general duty clause to mean that an employer has a legal obligation to provide a workplace free of conditions or activities that either the employer or industry recognizes as hazardous and that cause, or are likely to cause, death or serious physical harm to employees when there is a feasible method to abate the hazard. <u>This includes heat-related hazards</u> that are likely to cause death or serious bodily harm". (emphasis supplied)[4]

38. Despite Murphy's affirmative duty to "engage in the ADAAA 'interactive process' designed to 'identify and implement appropriate reasonable accommodations.' " <u>Humphrey v. Mem'l Hosps. Ass'n</u>, 239 F.3d 1128, 1137 (9th Cir. 2001), Murphy disregarded this regulation and brazenly mandated that Diaz return to work "without restrictions" in order to keep his job.

39. In a desperate attempt to spare his job, Diaz following the inappropriate and ill-advised orders of Murphy, had his doctor revise his note clearing him to return to work "without restrictions."

40. On August 18, 2020, Diaz presented his doctor's note in order to return to work.

41. Murphy informed Diaz that he had to write up the heat exhaustion incident and that if Diaz did not agree with what he wrote, he would be terminated from the company.

42. On August 19, 2020, Diaz returned to work and was issued a write-up by Murphy. The write-up contained false information and Diaz strongly disagreed with it.

---

[4] https://www.osha.gov/heat-exposure/standards

43. Murphy told Diaz that if he did not agree, he and the company could go their separate ways. Again, at no point did Murphy engage in the ADAAA required 'interactive process."

44. Diaz then confirmed through a co-worker that it was the Mack with no air conditioning that Murphy expected Diaz to drive again that day, despite Diaz previously suffering heat exhaustion. Once Murphy became aware of Diaz confirming this information, he became visibly upset and required Diaz to immediately leave the premises.

45. On August 19, 2020, Diaz was terminated without the Defendant even engaging in the required "interactive process" and in retaliation for complaining of a heat safety hazard in violation of OSAHA's regulation.

## COUNT ONE

## DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADAAA

46. Plaintiff incorporates paragraphs 1-45, with the same force and impact as if fully set forth herein at length.

47. Defendant employs more than fifteen employees.

48. Plaintiff suffers from the disability of high blood pressure.

49. Due to Plaintiff's condition, he would suffer heat exhaustion under high temperature.

50. Defendant, however, tasked Plaintiff with driving trucks not equipped with air conditioning under temperatures above 90 degrees. Plaintiff suffered heat exhaustion as a result, and felt exhausted, perspired profusely, and felt as though he may faint. Plaintiff informed Defendant of his debilitating exhausting condition.

51. However, approximately one week later, Defendant again tasked Plaintiff with driving

the same truck that did not have air conditioning under temperature above 90 degrees.

52. When Plaintiff raised safety concerns to Defendant, Defendant threatened that he would be terminated if he would not drive the truck – treating him disparately due to his condition.

53. Diaz later treated with his physician, who confirmed that he suffered heat exhaustion and that he had high blood pressure. Diaz informed Defendant of this diagnosis as well as the physician's note, stating that Diaz "would benefit from working in air conditioning truck."

54. Defendant, however, again treated Diaz disparately by mandating him to return to work "without restrictions" in order to keep his job.

55. Defendant further treated Diaz disparately by issuing him a write-up for the heat exhaustion incident, which contained false information.

56. On August 19, 2020, when Diaz confirmed through a co-worker that he would again be driving the truck without air conditioning, Defendant became upset and later terminated him.

57. Defendant subjected the Plaintiff to discrimination due to his disability.

58. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

   a) Being terminated on August 19, 2020.

59. Defendant's conduct is in violation of the ADAAA.

60. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe

benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

61. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### DISABILITY DISCRIMINATION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, AND FAILURE TO ACCOMMODATE, IN VIOLATION OF THE ADAAA

62. Plaintiff incorporates paragraphs 1-45, with the same force and impact as if fully set forth herein at length.

63. When Defendant learned of Plaintiff's disability of high blood pressure and resulting heat exhaustion due to driving in a truck without air conditioning under high temperature, Defendant never engaged in the ADAAA-required "interactive process."

64. Instead, Defendant continued to require Plaintiff to drive trucks not equipped with air conditioning.

65. Additionally, when Plaintiff requested a reasonable accommodation of driving trucks with air conditioning – which would not impose undue hardship upon the Defendant, Defendant refused and threatened to terminate Plaintiff.

66. Therefore, Defendant failed to participate in the required "interactive process" and failed to accommodate Plaintiff.

67. Defendant's misconduct was based on the Plaintiff's disability.

68. Defendant's conduct is in violation of the ADAAA.

## COUNT THREE

## RETALIATION,
## IN VIOLATION OF THE ADAAA

69. Plaintiff incorporates paragraphs 1-45, with the same force and impact as if fully set forth herein at length.

70. Plaintiff engaged in a protect activity by requesting a reasonable accommodation of driving in trucks that were equipped with air conditioning.

71. Defendant retaliated against the Plaintiff for engaging in protected activity by subjecting Plaintiff to adverse employment actions, including, but not limited to, the following:

    a)   Being terminated on August 19, 2020.

72. Defendant's termination of the Plaintiff occurred in extremely short temporal proximity --within several days after Plaintiff's request.

73. The above prescribed discriminatory action was motivated by the Defendant's retaliation against the Plaintiff.

74. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

75. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### RETALIATION,
### IN VIOLATION OF CONN. GEN. STAT. § 31-51Q

76. Plaintiff incorporates paragraphs 1-45, with the same force and impact as if fully set forth herein at length.

77. Plaintiff engaged in protected speech by voicing concerns over issues of workplace endangerment and workplace safety, pursuant to his rights protected by Connecticut General Statute §31-51q.

78. In retaliation for his good-faith complaints and raising awareness to safety concerns, Defendant subjected Plaintiff to adverse employment actions, including, but not limited to, the following:

    a)   Being terminated on August 19, 2020, shortly after his protected speech.

79. Plaintiff's speech is protected by Sections, 3, 4, and 14 of the Connecticut Constitution.

80. The exercise of his rights did not interfere with his job performance.

81. Plaintiff was discharged due to the exercise of his free speech rights guaranteed by the Connecticut Constitution, in violation of Conn. Gen. Stat. §31-51q.

82. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

83. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

## COUNT FIVE

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (HISPANIC RACE, ANCESTRY, ETHNICITY, AND NATIONAL ORIGIN DISCRIMINATION)

84. Plaintiff incorporates paragraphs 1-45, with the same force and impact as if fully set forth herein at length.

85. The Plaintiff is Hispanic.

86. The Plaintiff was at all times qualified for the position he held.

87. The Plaintiff was subjected to disparate treatment based upon his race, ancestry, ethnicity, and national origin, including, but not limited to: mandating that Plaintiff drive trucks without air conditioning despite his disability;

88. Plaintiff suffered adverse employment actions, including, but not limited to being wrongfully terminated on August 19, 2020.

89. Defendant's actions were motivated by the Plaintiff's race, ancestry, ethnicity, and national origin.

90. As such, Defendant's actions and conduct are a violation of Title VII.

91. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

92. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

                    THE PLAINTIFF,
                    LUIS DIAZ


By: _____/s/_____
      Michael C. McMinn (*ct27169*)
      **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
      1000 Lafayette Blvd., Suite 1100
      Bridgeport, CT 06604
      Tel: (203) 683-6007
      Fax: (203) 680-9881
      michael@mcminnemploymentlaw.com

      *COUNSEL FOR PLAINTIFF*